RAMON JACOBO GARCIA, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 42403

June 23, 2005

113 P.3d 836

*JoNell Thomas,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Jerome T. Tao,* Deputy District Attorney, Clark County, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, ROSE, J.:

On appeal, Ramon Jacobo Garcia argues that his convictions should be reversed because (1) the jury instruction on false imprisonment must include an asportation requirement, (2) the State presented insufficient evidence to support a verdict on kidnapping and false imprisonment, (3) the district court failed to hold a hearing on his motion to dismiss counsel, (4) the statutory reasonable doubt instruction is unconstitutional, (5) the district court failed to permit cross-examination of certain non-adverse witnesses, and (6) the convictions for conspiracy to commit robbery and conspiracy to commit burglary violate the Double Jeopardy Clause. We hold that when a person is charged with false imprisonment and a separate associated offense, an additional instruction stating that the false imprisonment requires a factual basis independent of the associated crime is required. Accordingly, Garcia's convictions for false imprisonment must be set aside. However, we conclude that the State presented sufficient evidence on the charges of kidnapping, that the district court did not abuse its discretion in failing to hold a hearing on Garcia's motion to dismiss counsel, and

that the reasonable doubt instruction required by NRS 175.211 is not unconstitutional. In addition, we conclude that the record is insufficient to establish that the district court erred by not permitting Garcia to cross-examine non-adverse witnesses at trial. Finally, we conclude that the evidence produced at trial is insufficient to support Garcia's conviction on the charge of conspiracy to commit robbery at the Silver Dollar Store, and we reverse the district court's judgment of conviction on that charge but affirm the conspiracy to commit burglary charge.

## FACTS

Garcia, along with his brother Juan Garcia (Juan) and two other codefendants, Juan Cota (Cota) and Juan Castaneda (Castaneda), was charged with multiple counts of robbery, kidnapping, and other related offenses stemming from the robbery of four businesses in Clark County, Nevada, between July 23 and July 31, 2001. Cota and Castaneda pleaded guilty before trial pursuant to plea negotiations. Following a five-day jury trial, Garcia was convicted on all 12 counts of robbery, attempted robbery, first-degree kidnapping, and conspiracy stemming from his participation in two of the four incidents. He was sentenced to serve a minimum of 26 years and a maximum of 4 consecutive life sentences in the Nevada Department of Corrections, and ordered to pay restitution in the amount of $4,900.

On the afternoon of July 23, 2001, Garcia and one of his co-conspirators entered the automotive shop known as Fuel Injection Systems located at 642 North Main Street in Las Vegas, Nevada. The two men discussed having their vehicle repaired and then watched a soccer game while waiting for the remaining customers to leave. Garcia then pointed a handgun at Fernando Lozada, the owner of Fuel Injection Systems, and Remsjao Barre, one of his employees. Garcia ordered Lozada and Barre to the back of the store, told them to lie down on their stomachs, and bound their hands with duct tape. Garcia and his accomplice then demanded money from Lozada and Barre, who gave them $300. The two men then ransacked the store and fled with more than $3,000, along with a cordless telephone handset and a cellular telephone.

Initially, Lozada identified Garcia and his brother as suspects from a photographic lineup. However, at trial Lozada testified that Garcia was the assailant, and he exonerated Garcia's brother Juan. Barre also identified Garcia as the man who robbed them, testifying that he was 100% certain that Garcia was the man. A Las Vegas Metropolitan Police Department (LVMPD) crime scene analyst testified that she was unable to obtain fingerprints from the crime scene.

Following the Fuel Injection Systems robbery, two robberies occurred at Carniceria Los Alamitos and B&H Radiators on July 26 and 27, 2001, with similar factual circumstances. The victims in each incident identified Garcia's brother Juan as one of the gunmen. However, Garcia was not identified as an assailant in either incident and was not charged in connection with those robberies.

The fourth robbery occurred on July 31, 2001, at the Silver Dollar Family Discount Store, located at 33 North 25th Street in Las Vegas, Nevada. As the owner, Darryl Stuckert, returned to the store he noticed an older model white Cadillac at the far end of the parking lot. Inside the store were Stuckert's wife and four Hispanic men. One was a customer, and the other three participated in the robbery. Garcia pointed his gun at Mr. Stuckert, and one of his two accomplices pointed a gun at the customer who was still in the store. Mrs. Stuckert set off two alarms, one silent and the other audible. The men ordered Mrs. Stuckert to open the cash register, but she refused. Garcia ordered all three victims into the back office and directed one of his accomplices to grab the cash register. Garcia ordered Mr. Stuckert to turn off the alarm, but when he was unable to do so, Garcia unsuccessfully attempted to disarm it by smashing the keypad with his gun. Garcia and his two accomplices were in the store for approximately three to four minutes. Before leaving, Garcia locked the Stuckerts and the remaining customer in the back office by throwing the deadbolt on the security door from the outside. Fortunately, the three were able to escape the office by way of a side door that was not locked.

The police investigated all four incidents and learned that Garcia, his brother Juan, Cota, and Castaneda might be involved in the crimes. The four men lived together in an apartment a few blocks from the locations of the crimes. The police conducted a search of the apartment—initially pursuant to consent from Juan, and subsequently with a warrant. As a result, the police recovered several items including the cordless telephone handset taken from Fuel Injection Systems and the cash register from the Silver Dollar Family Discount Store.

At trial, Garcia's girlfriend, Kacey Nicole Mix (Mix), testified that she stayed in the apartment with the four men and that they drove a white Cadillac matching the description Mr. Stuckert provided. She testified that there were guns in the apartment and that the group had a lot of money in their possession, although to her knowledge none of them maintained a job. Witnesses from both the Fuel Injection Systems and Silver Dollar robberies identified Garcia from the photographic lineup shown to them by the LVMPD. The police arrested all four men and charged Garcia with crimes stemming from the Fuel Injection Systems and Silver Dollar Discount Store robberies.

Before trial, on August 21, 2003, Garcia filed a proper person motion to dismiss counsel and motion for appointment of alternate counsel. Garcia's motion was based on his attorney's alleged failure to (1) communicate with him, (2) investigate, (3) discuss Garcia's being forced into plea bargains on January 1, 2003, (4) address mistaken information regarding prior felonies and the influence of this information on the plea negotiations, and (5) investigate and use available resources to obtain a fair sentence. Garcia filed the motion in open court, but he refused to speak to the court regarding the matter. Garcia's attorney, Joseph Sciscento, explained to the court that he had visited Garcia at the jail and discussed the case through an interpreter because Garcia speaks only Spanish. Sciscento noted that he had gone over the discovery with Garcia, but that he had refused to leave the discovery information with Garcia at the jail out of concern that another inmate would have to translate the information and could then testify against him at trial. The district court denied Garcia's motion. Sciscento noted his concerns and agreed to deliver all discovery to Garcia for his review.

Following trial, the jury convicted Garcia of the following crimes for his participation in the Fuel Injection Systems incident: one count of burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon for taking money from Fernando Lozada and Remsjao Barre, and two counts of first-degree kidnapping with the use of a deadly weapon also pertaining to Lozada and Barre.

For his actions in the Silver Dollar Store, the jury convicted Garcia of: one count of conspiracy to commit burglary, one count of burglary while in possession of a firearm, one count of conspiracy to commit robbery, one count of attempted robbery with the use of a deadly weapon for attempting to take money from Darryl Stuckert, Marie Stuckert, and Leonardo Jeminez, and three counts of false imprisonment with the use of a deadly weapon also involving the Stuckerts and Jeminez.

## DISCUSSION

*Jury instruction on false imprisonment*

Garcia argues that his convictions for false imprisonment in the Silver Dollar robbery must be reversed because the district court did not properly instruct the jury on the elements of the offense. Garcia contends that to convict him of false imprisonment, the jury had to find that the detention of the victims was not incidental to the robbery. Garcia concedes that false imprisonment is a lesser-included offense of the crime of kidnapping, but he argues that

because some movement or confinement is inherent in any robbery, punishment for robbery and false imprisonment in this case amounts to a double punishment not contemplated by the Legislature.

While Garcia makes a logical argument concerning the need for a companion instruction to the instruction dealing with false imprisonment, he failed to offer a proposed instruction informing the jury that the false imprisonment counts could not be based on facts that are incidental to the charged robbery if a robbery conviction was returned. Failure to offer a proposed instruction in this situation ordinarily waives the issue for appellate review.[1] However, we conclude that convicting Garcia on the attempted robbery charge and also on the false imprisonment charges violates our directive in *Jefferson v. State*,[2] and we address this issue as plain error.

In *Jefferson,* the defendant told a counter clerk that "this [was] a stick up," went behind the counter, and took money from the cash register. He then told the female clerk to go to the back room where she was told to undress and lie on her stomach. The clerk did this, and the defendant then covered her eyes with a piece of cloth and tied her hands and feet.[3] At trial, the defendant was convicted of both robbery and second-degree kidnapping. On appeal, we struck the conviction for second-degree kidnapping because the charge was based on facts that were part of and incidental to the robbery conviction. Specifically we stated:

> [W]e now hold that where a person has been charged with second degree [kidnapping] and a separate, associated crime, the charge of second degree [kidnapping] will lie only where the movement of the victim is over and above that required to complete the associated crime charged.
>
> Applying this test to the case at hand, we do not believe that bringing the victim from the counter to the back room during the course of robbery constitutes movement beyond that required in the robbery. Therefore, the conviction for second degree [kidnapping] must be set aside.[4]

We see no difference between the facts of the case at bar and the facts in *Jefferson.* Garcia attempted to rob three individuals and then directed them to a back room. He did not tie them up, but merely closed the door and attempted to lock them in. Following

---

[1]*McKenna v. State,* 114 Nev. 1044, 1052, 968 P.2d 739, 745 (1998) (noting that the "[f]ailure to object to or request a jury instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect the defendant's right to a fair trial").

[2]95 Nev. 577, 599 P.2d 1043 (1979).

[3]*Id.* at 578, 599 P.2d at 1043.

[4]*Id.* at 579-80, 599 P.2d at 1044 (citation omitted).

our holding in *Jefferson,* we conclude that the facts that are the basis of the false imprisonment convictions are part of and incidental to the conviction of attempting to rob the three individuals taken to the back room. Accordingly, the convictions for false imprisonment must be reversed.

*Sufficiency of the evidence on the kidnapping charges*

Garcia was convicted of two counts of first-degree kidnapping with the use of a deadly weapon relating to the Fuel Injection Systems incident. Garcia argues that there is insufficient evidence to support those convictions under this court's holding in *Wright v. State* because, to convict a defendant of both robbery and kidnapping arising from the same criminal incident, the State must show that the movement of the victim or victims was beyond that required to complete the associated robbery.[5]

When a party challenges the sufficiency of the evidence on appeal in a criminal case, the standard of review is whether, viewing the evidence in a light favorable to the prosecution, a reasonable jury could have been convinced of the defendant's guilt beyond a reasonable doubt.[6] This court will not set aside a guilty verdict unless it determines that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

In *Wright,* this court held that when a defendant is convicted of first-degree kidnapping and an associated offense, the kidnapping conviction will not stand if the movement of the victim was incidental to the associated offense and did not increase the risk of harm to the victim beyond that of the associated crime.[8] Garcia notes numerous cases with similar factual circumstances to the present case where the State either elected not to charge the defendants with kidnapping or where the jury did not return a guilty verdict.[9] Garcia fails, however, to address either the legal standards

---

[5]94 Nev. 415, 417, 581 P.2d 442, 443 (1978).

[6]*Lay v. State,* 110 Nev. 1189, 1192, 886 P.2d 448, 450 (1994); *Hutchins v. State,* 110 Nev. 103, 107-08, 867 P.2d 1136, 1139 (1994).

[7]*Jackson v. Virginia,* 443 U.S. 307, 319 (1979), *cited with approval in Koza v. State,* 100 Nev. 245, 250, 681 P.2d 44, 47 (1984).

[8]94 Nev. at 417-18, 581 P.2d at 443-44.

[9]Garcia cites *Servin v. State,* 117 Nev. 775, 32 P.3d 1277 (2001) (placing a woman confined to a wheelchair in a bathroom not charged as kidnapping); *Mulder v. State,* 116 Nev. 1, 5, 992 P.2d 845, 847-48 (2000) (defendant not charged with kidnapping when victim was bound with duct tape before robbery and murder); *State v. LaPena,* 114 Nev. 1159, 1161, 968 P.2d 750, 751

applicable to kidnapping or how the evidence was insufficient to meet those requirements.

Under Nevada law, first-degree kidnapping is "the willful seizing, confining, or carrying away of a live person."[10] While the language of NRS 200.310(1) does not include an asportation requirement, this court requires it when the kidnapping is incidental to an associated offense, such as robbery, that inherently involves the restraint of the victim.[11] To meet the asportation requirement when robbery is also charged, the movement of the victim must be over and above that required to complete the associated crime and must substantially increase the risk of harm beyond that necessarily present in the crime of robbery itself.[12]

In the present case, the evidence presented at trial demonstrated that during the Fuel Injection Systems burglary, Garcia ordered the two victims outside the building to the back of a truck, where he held them for 15 minutes at gunpoint before finally taking them into the office, ordering them to lie facedown, and binding them with duct tape. The jury was properly instructed that the kidnapping offenses could not be incidental to the robberies. We conclude that based on these facts there is sufficient evidence for a reasonable juror to conclude that Garcia committed first-degree kidnapping during the Fuel Injection Systems robbery.

*Failure to hold a hearing on Garcia's motion to dismiss counsel*

Garcia argues that the district court abused its discretion by failing to hold a hearing on his motion to remove counsel, in violation of his Sixth Amendment rights. At the August 21, 2003, calendar call, just a few days before his trial was scheduled to begin, Gar-

---

(1998) (defendant not charged with kidnapping when defendant tied up the victim during a robbery); *Barrett v. State,* 105 Nev. 361, 364, 775 P.2d 1276, 1278 (1989) (no kidnapping charges when victim was sprayed with mace and tied up during associated robbery); and *Collier v. State,* 103 Nev. 563, 564, 747 P.2d 225, 225 (1987) (kidnapping charges not filed in case where victim was tied up and left in supermarket cooler during robbery and murder).

[10]*Ducksworth v. State,* 113 Nev. 780, 793, 942 P.2d 157, 166 (1997). NRS 200.310(1) provides:

> A person who willfully seizes, confines, inveigles, entices . . . conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person . . . for the purpose of committing sexual assault, extortion or robbery upon or from the person . . . is guilty of kidnapping in the first degree which is a category A felony.

[11]*Hutchins,* 110 Nev. at 108, 867 P.2d at 1139-40.

[12]*Wright,* 94 Nev. at 417-18, 581 P.2d at 443-44.

cia filed a written motion in open court to dismiss his counsel and for the appointment of new counsel. Garcia sought removal of counsel for the following reasons: (1) failure to communicate, including failure to visit him at the Clark County Detention Center; (2) failure to investigate; (3) failure to discuss his being forced into a plea bargain; (4) failure to address mistaken information regarding prior felonies and the influence of this information on his plea negotiations; and (5) failure to investigate and use available resources to obtain a fair sentence. We conclude that the district court did not abuse its discretion by denying Garcia's motion.

This court recently addressed the issue of the district court's denial of a motion to substitute counsel in *Young v. State*.[13] In that case, we noted that "we have previously held that '[w]here a motion for new counsel is made considerably in advance of trial, the [district] court may not summarily deny the motion but must adequately inquire into the defendant's grounds for it.' "[14] Initially, it is important to note that a defendant in a criminal trial does not have an unlimited right to the substitution of counsel.[15] Absent a showing of sufficient cause, a defendant is not entitled to the substitution of court-appointed counsel at public expense.[16] Nevertheless, when there is a complete collapse of the attorney-client relationship, the refusal to substitute counsel violates a defendant's Sixth Amendment rights.[17] *Young* set forth three factors to consider when reviewing a district court's denial of a motion for substitution of counsel. The three factors are: (1) the extent of the conflict between the defendant and his or her counsel, (2) the timeliness of the motion and the extent to which it will result in inconvenience or delay, and (3) the adequacy of the court's inquiry into the defendant's complaints.[18] We review the district court's denial of a motion to substitute counsel for an abuse of discretion.[19]

### (A) The extent of the conflict

In *Young*, the court noted that there was a significant breakdown between Young and his attorney. On five occasions Young com-

---

[13]120 Nev. 963, 102 P.3d 572 (2004).

[14]*Id.* at 968, 102 P.3d at 576 (quoting *Gallego v. State,* 117 Nev. 348, 363, 23 P.3d 227, 237 (2001)).

[15]*Id.*

[16]*Id.*

[17]*Id.* at 968-69, 102 P.3d at 576.

[18]*Id.* at 968-71, 102 P.3d at 576-78.

[19]*Id.* at 968, 102 P.3d at 576.

plained to the court regarding the issue, twice filing a motion to substitute counsel and consistently complaining that his attorney had not been to see him, a problem that continued even after the court ordered weekly visits. Here, Garcia's attorney, Joseph Sciscento, explained to the court that he visited Garcia at the jail and discussed the case through an interpreter, as Garcia speaks only Spanish. Sciscento noted that he had reviewed the discovery with Garcia but that he had refused to leave the discovery information with Garcia at the jail because of concerns that another inmate would have to translate the information and could then potentially testify against Garcia at trial. However, after voicing his concerns, Sciscento agreed to deliver the discovery to Garcia for his review.

The facts of this case are distinguishable from *Young*. Garcia, in his motion, stated that since Sciscento's appointment as counsel he had not been to see Garcia or contacted him by telephone. The record belies this statement. Sciscento was appointed to represent Garcia on January 23, 2003, replacing Garcia's previous counsel because an unspecified disability prevented him from continuing representation. On February 25, 2003, Sciscento represented to the court that he had spoken to Garcia numerous times throughout the week regarding an offered plea negotiation. Given that Sciscento visited Garcia on numerous occasions, and because he agreed to provide Garcia the discovery documents as requested, we conclude that no irreconcilable conflict existed between Garcia and his court-appointed counsel.

### (B) Timeliness of the motion and extent of inconvenience or delay

As noted, the defendant in *Young* made multiple motions to substitute counsel over the course of the three months leading up to the date his trial was scheduled to begin. This court noted that had the district court acted on Young's motion in a timely manner, the resulting inconvenience and delay would have been minimal.[20] Moreover, the court noted that Young's motion was not made in bad faith or to curtail the administration of justice.[21]

Here, Garcia filed his motion in open court at the August 21, 2003, calendar call, just days before his trial was set to begin. As noted above, Sciscento was appointed to represent Garcia in January 2003, and in the ensuing months he spoke with the defendant regarding discovery and plea negotiations. However, at no time did Garcia attempt to notify the court that there was a conflict with his counsel. Garcia had months to express his concerns to his counsel

---

[20]*Id.* at 970, 102 P.3d at 577.

[21]*Id.*

and the court, but he did not do so. He waited until the eve of trial and filed his motion in open court—a fact suggestive of a dilatory motive. The record indicates that Garcia's motion, although timely in the sense that it was filed before the actual start of the trial, would have resulted in unnecessary inconvenience and delay, if granted.

### (C)   Adequacy of the district court's inquiry

In *Young,* this court discussed at length the requirement that the district court must make an adequate inquiry into the defendant's complaint.[22] The court in *Young* determined that, in the face of Young's repeated attempts to raise the issue, the district court conducted an abbreviated inquiry into his motion even though Young repeatedly expressed concern over the lack of attorney-client communication and his attorney's complete failure to file any pretrial motions or contact witnesses.[23] More importantly, Young's attorney had visited him only one time in the ten weeks before trial, in direct violation of a court order to make weekly visitations with the defendant.[24]

Here, Garcia filed his motion seeking the substitution of counsel in open court, but refused to speak to the court regarding the matter, stating, "I just want to turn this paperwork into you, I don't want to speak. I don't want to speak, I just want to turn this paperwork into you." His attorney, Mr. Sciscento, noted that he had spoken with Garcia and reviewed the discovery with him through an interpreter. Garcia's real concern appears to be that his attorney would not leave the discovery with him at the jail.

We conclude that the court's inquiry, although limited, was adequate under the circumstances. There was little need to perform an in camera hearing in this case, especially considering that Garcia's attorney addressed the court on the motion and agreed to resolve the issues in due course. As such, the district court did not abuse its discretion by failing to hold a hearing regarding Garcia's motion to substitute counsel.

### Constitutionality of NRS 175.211

Garcia argues that the statutory reasonable doubt instruction is unconstitutional.[25] At trial, Garcia offered various alternative in-

---

[22]*Id.* at 970-71, 102 P.3d at 577-78.

[23]*Id.* at 971, 102 P.3d at 577.

[24]*Id.* at 967, 971, 102 P.3d at 575, 577.

[25]Jury instruction number 5 is taken verbatim from NRS 175.211(1):

A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the

structions. However, in Nevada, the definition of reasonable doubt is specified by statute and, under NRS 175.211(2), no other jury instruction on reasonable doubt is permitted. Garcia concedes that this court has repeatedly rejected challenges to the constitutionality of this particular instruction.[26] Nonetheless, Garcia notes that he is preserving the issue for federal appeal and argues that we should now overrule our prior cases. We decline to do so.

## Cross-examination of non-adverse witnesses

Garcia attempted to cross-examine witnesses called by the State to testify regarding the incidents at Los Alamitos and B&H Radiators. The State objected, arguing that because Garcia was not charged with any crimes related to their testimony, the Sixth Amendment right to confrontation was inapplicable. The district court sustained the State's objection. Garcia's counsel then argued that because he would not be permitted to cross-examine the witnesses, the State could not charge Garcia based upon a generalized conspiracy theory stemming from the criminal incidents at B&H Radiators and Los Alamitos. As a result, the State amended the charges to alleviate Garcia's counsel's concerns and remove any inference that Garcia conspired in either of these two crimes.

Garcia argues on appeal that the district court violated his Sixth Amendment rights by refusing his request. Garcia concedes that he was not charged with any crimes arising from these incidents and that the testimony of the witnesses related instead to his brother Juan's participation in the criminal acts that were the subject of their testimony. Garcia argues, however, that because his defense theory was that this was a case of mistaken identity and that it was his brother Juan who committed the crimes on all four occasions, the district court should have permitted him to elicit testimony at trial from all of the State's witnesses.

The Sixth Amendment to the United States Constitution provides a criminal defendant with the fundamental right to confront and

more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

[26]*Browning v. State,* 120 Nev. 347, 359, 91 P.3d 39, 48 (2004); *Mason v. State,* 118 Nev. 554, 558, 51 P.3d 521, 524 (2002); *Noonan v. State,* 115 Nev. 184, 189, 980 P.2d 637, 640 (1999); *Leonard v. State,* 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998); *Middleton v. State,* 114 Nev. 1089, 1111-12, 968 P.2d 296, 311 (1998); *Elvik v. State,* 114 Nev. 883, 898, 965 P.2d 281, 291 (1998); *Chambers v. State,* 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997);

cross-examine witnesses against him at trial.[27] The Sixth Amendment right to confrontation is applicable to the states by the Fourteenth Amendment.[28] In *Chambers v. Mississippi,* the United States Supreme Court stated:

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.[29]

Thus, provided it is admissible, a defendant is entitled to present any relevant evidence and testimony at trial that someone other than the defendant committed the offense.[30]

However, in this case, no specific objection appears on the record regarding Garcia's argument that cross-examination was necessary to elicit evidence that his brother committed all of the offenses, nor did Garcia's counsel make an offer of proof as to the supposed testimony that would be elicited at trial. Furthermore, Garcia did not reserve the right or attempt to re-call these witnesses during his case in chief. Therefore, because the record does not show that Garcia was prevented from eliciting testimony from these witnesses pertaining to his theory of the case, we perceive no Sixth Amendment violation.

### Double jeopardy

As a result of the incident at the Silver Dollar Discount Store, the State charged Garcia and his codefendants with one count of conspiracy to commit burglary by entering the Silver Dollar Store with intent to commit a larceny therein, and one count of conspiracy to commit robbery for an alleged agreement to steal Leonardo Jeminez's wallet and money once inside the store. The jury convicted Garcia on both counts. Garcia argues on appeal that these dual convictions violate the Double Jeopardy Clause of the Fifth Amendment.

---

*Evans v. State,* 112 Nev. 1172, 1191, 926 P.2d 265, 277-78 (1996); *Bollinger v. State,* 111 Nev. 1110, 1114-15, 901 P.2d 671, 674 (1995); *Milton v. State,* 111 Nev. 1487, 1492, 908 P.2d 684, 687 (1995); *Lord v. State,* 107 Nev. 28, 38-40, 806 P.2d 548, 554-56 (1991); *see also Ramirez v. Hatcher,* 136 F.3d 1209 (9th Cir. 1998) (upholding the constitutionality of NRS 175.211(1)).

[27]U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973).

[28]*Pointer v. Texas,* 380 U.S. 400, 403 (1965).

[29]410 U.S. at 294.

[30]*Cf. id.* at 302-03.

The Double Jeopardy Clause has been interpreted to encompass three distinct functions.[31] Double jeopardy protects a criminal defendant (1) from a subsequent prosecution following a conviction on the charges, (2) from a subsequent prosecution following an acquittal, and (3) from multiple punishments for the same offense in a single trial.[32] Garcia seeks protection under the third prong of double jeopardy protection.

In *Braverman v. United States,* the United States Supreme Court held that when there is a single agreement to commit one or more crimes it is unconstitutional for a state to punish a defendant for multiple crimes in violation of a single statute.[33] The Court stated that ''[t]he one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.''[34] In *Braverman,* as a result of the illicit manufacture and distribution of distilled spirits, the defendants were charged with seven separate counts of conspiracy to violate seven separate and distinct sections of the Internal Revenue Code.[35] However, as the Court noted, all seven charges in that case stemmed in fact from a single agreement to act in violation of the code.[36]

The application of the *Braverman* rule is an issue of first impression in Nevada. In *Braverman,* the issue arose because the government conceded that only a single agreement to commit the offenses was proven by the evidence before the jury.[37] As the *Braverman* Court noted, ''Where each of the counts of an indictment alleges

[31]The Double Jeopardy Clause provides, ''[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'' U.S. Const. amend V. The Fifth Amendment is applicable to the states via the Fourteenth Amendment. *See North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).

[32]*Pearce,* 395 U.S. at 717 ('' 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense' '' (quoting *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 168 (1873))).

[33]317 U.S. 49, 52-54 (1942).

[34]*Id.* at 53-54.

[35]*Id.* at 50-51.

[36]*See id.* at 52, 53-54 (''Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes.'' (distinguishing *Blockburger v. United States,* 284 U.S. 299, 301-04 (1932))).

[37]*Id.* at 52.

a conspiracy to violate a different penal statute, it may be proper to conclude . . . that several conspiracies are charged rather than one, and that the conviction is for each.''[38]

Garcia argues that the State charged him with a single agreement to accomplish multiple criminal purposes. The State disagrees, noting that it charged Garcia with multiple counts of conspiracy to violate two different Nevada statutes and that under Nevada law a defendant may be convicted of both robbery and burglary.[39]

Here, the State did in fact charge Garcia with multiple counts of conspiracy: count XXVIII, the conspiracy to commit burglary by entering the Silver Dollar Discount Store with the intent to commit a larceny therein, and count XXIX, a separate and distinct charge of conspiracy to commit robbery arising from the unlawful taking of Leonardo Jeminez's wallet. The two crimes involve separate and distinct elements charged under NRS 200.380 and NRS 205.060 independently and in conjunction with Nevada's conspiracy statute, NRS 199.480.[40] To convict Garcia of conspiracy to commit burglary, the State was required to show that Garcia and another agreed to enter the establishment with the intent to commit a felony therein.[41] In contrast, to prove conspiracy to commit robbery, the State must show that Garcia and another agreed to take Jeminez's property by force, fear, or threat.[42] Nevada law specifically authorizes the prosecution for each crime committed during the commission of a burglary.[43] Thus, it is constitutionally permissible to convict Garcia on both conspiracy to commit burglary and conspiracy to commit robbery provided that the State was capable of proving that two separate and distinct agreements to commit the two different crimes existed.[44]

---

[38]*Id.*

[39]*E.g., Rodriguez v. State*, 117 Nev. 800, 813, 32 P.3d 773, 781 (2001); *Bennett v. State,* 106 Nev. 135, 142, 787 P.2d 797, 801-02 (1990) (noting that because NRS 205.070 specifically authorizes the prosecution for each crime committed during the commission of a burglary, each crime can be used separately as an aggravating circumstance at sentencing); *Jones v. State,* 95 Nev. 613, 620, 600 P.2d 247, 252 (1979) (holding that convictions of burglary and robbery did not violate double jeopardy).

[40]NRS 199.480(1) provides, ''[W]henever two or more persons conspire to commit murder, robbery, sexual assault, kidnapping in the first or second degree, arson in the first or second degree, or [identity theft], each person is guilty of a category B felony.''

[41]NRS 199.480; NRS 205.060.

[42]NRS 199.480; NRS 200.380.

[43]NRS 205.070.

[44]*See Zgombic v. State,* 106 Nev. 571, 578, 798 P.2d 548, 552 (1990) (noting that Nevada has adopted the analysis from *Blockburger,* 284 U.S. 299 (1932), to determine whether a violation of double jeopardy exists).

In *Albernaz v. United States*,[45] the United States Supreme Court upheld multiple conspiracy convictions resulting in consecutive sentences when the conspiracy charges stemmed from a single course of conduct involving the importation and distribution of marijuana in violation of two distinct federal statutes.[46] The Court noted that because each of the convictions required the proof of a fact that the other did not, there was no violation of *Blockburger*,[47] and because two different statutes were involved the case was distinguishable from *Braverman*.[48] The Court reasoned that because the two statutes at issue were directed to combat distinct and separate social harms, it was permissible to convict and sentence the defendant on conspiracy to violate each of the different statutes.[49] This is so because, as the Court explained, it is the province of the Legislature to define criminal offenses and prescribe correlative punishments.[50] " 'Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' "[51]

Returning to the case at hand, the facts elicited at trial indicate that Garcia and his coconspirators agreed to enter the Silver Dollar Discount Store and commit a larceny. This provided sufficient evidence to support the charge of conspiracy to commit burglary by entering the store with the intent to commit larceny. However, the evidence to support the charge of conspiracy to commit robbery by an agreement to rob Leonardo Jeminez is another matter. Darryl Stuckert testified that one of the three assailants pointed a gun at Jeminez, a customer who was shopping in the Silver Dollar Store, and took his wallet and money. The testimony at trial fails to prove the existence of a separate and distinct agreement between the three men to rob Jeminez. Garcia and the coconspirators did not know of Jeminez when they entered the Silver Dollar Store, and there is insufficient evidence to establish an agreement to rob

---

[45]450 U.S. 333 (1981).

[46]*Id.* at 334-35.

[47]*Id.* at 339.

[48]*Id.* at 339-40.

[49]*Id.* at 343.

[50]*Id.* at 344.

[51]*Id.* (citation omitted). "It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. *See, e.g., Harris v. United States,* 359 U.S. 19 (1959); *Gore v. United States,* 357 U.S. 386 (1958). This is true even though the 'single transaction' is an agreement or conspiracy. *American Tobacco Co. v. United States,* 328 U.S. 781 (1946)." *Albernaz,* 450 U.S. at 345 n.3.

this man once in the store. Without proof of a separate agreement, Garcia's conviction for this conspiracy cannot stand. For this reason, we reverse Garcia's conviction of conspiracy to rob Jeminez at the Silver Dollar Store. Because the evidence is insufficient on this issue, it is unnecessary to address Garcia's claim that *Braverman* applies, and we decline to do so.

## CONCLUSION

The false imprisonment convictions were based on facts that were part of and incidental to the attempted robbery conviction. We conclude that these three false imprisonment convictions were redundant and must be reversed. We also conclude that the State presented sufficient evidence to sustain Garcia's convictions for kidnapping and that the district court did not err in failing to hold a hearing on Garcia's motion to dismiss counsel. Additionally, we hold that Garcia's challenge to the reasonable doubt instruction required by NRS 175.211 is without merit. We further conclude that because no offer of proof was made at trial, the record is insufficient to establish that the district court erred in denying Garcia the opportunity to cross-examine certain non-adverse witnesses called by the State. Finally, we hold that the evidence produced at trial is insufficient to support Garcia's conviction on the charge of conspiracy to commit robbery for his actions in the Silver Dollar robbery. Accordingly, we reverse the district court's judgment of conviction as to the charges of false imprisonment and conspiracy to commit robbery and affirm Garcia's convictions on all other charges.

GIBBONS and HARDESTY, JJ., concur.