# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT SEAN WILLIAMS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 70517

FILED

MAR 2 1 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of murder with use of a deadly weapon, burglary while in possession of a firearm, discharging a firearm at or into an occupied structure, assault with a deadly weapon, resisting a public officer with use of a firearm, and possession of a firearm by an ex-felon. Eighth Judicial District Court, Clark County; Kerry Louise Earley, Judge.

At appellant Robert Williams' trial, the State introduced evidence that Williams broke into a home, stole a firearm, and shot and killed a man at a nearby park with the stolen weapon. The following day, Williams went to the apartment of Denise Nicholson, located on the second floor of an apartment complex, apparently to retrieve a backpack he had left there. When she refused him entrance, Williams broke the front window of the apartment, demanding Nicholson and her children leave. Once they had fled the apartment, Williams began firing the weapon within the apartment. Nicholson heard the gunshots and contacted the police with a neighbor's phone.

18-10982

Officers James Rothenburg, James Downing, and Nicholas Sarafin responded to the call and, upon seeing the windows broken in the front of the apartment, began to approach to walk up the steps. At some point while the officers were on or near the stairs, Williams resumed shooting. Officers Rothenburg and Downing sought cover behind a short wall nearby, and Officer Sarafin took cover behind a palm tree. Officer Sarafin testified that he saw a mattress and dresser pressed up against the broken windows and could hear bullets impacting around him.

Officer Juan Fernandez then arrived at the scene and parked his police cruiser outside the back window of the apartment to ensure Williams could not flee. Initially, Officer Fernandez took cover behind his cruiser, but later he retreated to a nearby alleyway during a break in the gunfire. Officer Fernandez later saw that four bullets had struck his cruiser. Officer Steven Hatch also arrived at the scene and took cover. Officer Hatch testified that he could hear the shots impacting around him. Officer Thomas Murray arrived at the scene and began directing traffic away from the incident when Officer Rothenburg shouted to him, indicating Officer Murray was within the line of fire. Officer Murray took cover behind his vehicle and testified that he heard bullets impacting around him as well. A SWAT team arrived at the scene, removed Williams from the apartment and took him into custody.

At the calendar call for Williams' original trial date, Williams asked the court why he was not receiving a speedy trial. The court informed him that his counsel's filing of a pretrial petition for a writ of habeas corpus resulted in the waiver of his right to speedy trial. Williams then stated that he wished to relieve his counsel because he did not trust her, apparently not understanding that the writ petition had been filed on his behalf. The court

responded by saying it would deal with the issue later. Williams then became belligerent, and the court had him removed. The court stated on the record, but outside of the presence of Williams, that he could raise the motion at a later time if he wished. The record does not indicate that Williams ever raised the issue again.

The district court later held a hearing on a question submitted by Williams' counsel for inclusion on the jury questionnaire, asking "[d]o you believe African-Americans are more likely to be confronted by police officers than others." The court said it would not include that question, as presently phrased, because it seemed to be asking jurors to consider broader political developments and did not relate to any issues presented in Williams' case. The court added that Williams could brief the issue or re-phrase the question.

Williams was subsequently convicted by a jury of first-degree murder with use of a deadly weapon, burglary while in possession of a deadly weapon, three counts of discharging a firearm at or into an occupied structure, six counts of assault with a deadly weapon, and resisting a public officer with a firearm. He now appeals from those convictions.

## DISCUSSION

*The State presented sufficient evidence to support the six convictions for assault with a deadly weapon against the responding officers*

Williams argues that, because assault is a specific intent crime, the State was required to prove that he had specific knowledge of each officer's presence and it did not do so. Because the shots fired by Williams forced the officers to seek shelter and Williams had barricaded the apartment window, Williams contends that it would have been impossible for him to see the officers he was convicted of assaulting. We disagree.

When an appellant challenges his or her conviction based on insufficient evidence, "the standard of review is whether, viewing the evidence in a light favorable to the prosecution, a reasonable jury could have been convinced of the defendant's guilt beyond a reasonable doubt," and the conviction will not be overturned unless "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State*, 121 Nev. 327, 335, 113 P.3d 836, 841 (2005). A trier of fact can rely solely on circumstantial evidence to find the elements of a crime satisfied, and is allowed to draw reasonable inferences from the evidence presented. *Wilkins v. State*, 96 Nev. 367, 374-75, 609 P.2d 309, 313-14 (1980).

Assault with a deadly weapon occurs when an individual either "(1) [u]nlawfully attempt[s] to use physical force against another person; or (2) [i]ntentionally plac[es] another person in reasonable apprehension of immediate bodily harm" with the use of a deadly weapon. NRS 200.471(1)(a), (2). Because a trier of fact cannot know a defendant's thoughts, they have to rely on inferences from the surrounding circumstances to ascertain intent. *Wilson v. State*, 85 Nev. 88, 90, 450 P.2d 360, 361-62 (1969).

The facts presented to the jury support the conclusion that Williams knew of the officers' presence and either attempted to shoot them or placed them in immediate apprehension of being shot. The fact that Williams alternated fire between the front and rear windows of the apartment suggests he was aware there were police officers outside both locations. That Williams chose to barricade the window suggests that he not only knew people were outside, but that he anticipated they would be returning fire. The gunfire halting and then resuming when the officers

Supreme Court
OF
Nevada

(O) 1947A

attempted to approach the apartment may further suggest that Williams fired a hail of bullets at the officers. Finally, Williams' knowledge of the presence of police officers can be inferred from the fact that he fired into the side of a police cruiser.

The testimony of each individual police officer further supports the conclusion that each officer at the scene was placed in immediate apprehension of being struck by gunfire and the inference that Williams did so intentionally. Each officer testified they either heard rounds impacting around them, going by them, or directed towards them. The fact that none of the officers chose to leave cover to confirm that Williams was shooting specifically at them is understandable, and the testimony from each officer detailing the clustering of gunfire around each of them is more than adequate for a jury to infer intent here. Therefore, the State presented sufficient evidence to support each of the assault convictions.

*The district court did not abuse its discretion by preventing Williams from asking jurors if they "believe African-Americans are more likely to be confronted by police officers than others"*

Williams argues that his proposed question for the jury questionnaire can be distinguished from others this court has determined were properly prevented from being presented to the jury because the question did not attempt to predict how the jurors would vote or indoctrinate them, but was aimed at unearthing a specific bias. Williams simply concludes that because the posed question was dissimilar, it was improperly denied. In his reply brief, Williams argues that the Supreme Court's decision in *Peña-Rodriguez v. Colorado*, ___ U.S. ___, 137 S. Ct. 855 (2017), imposes a duty to allow questions regarding potential racial bias. We disagree here as well.

 

A trial court's decision not to allow a proposed voir dire question is reviewed for abuse of discretion, and will be granted "considerable deference" by appellate courts. *Johnson v. State*, 122 Nev. 1344, 1354-55, 148 P.3d 767, 774 (2006); *see also Hogan v. State*, 103 Nev. 21, 23, 732 P.2d 422, 423 (1987). Part of this discretion is the ability to determine which lines of questioning will uncover relevant prejudices, rather than introduce issues distracting to potential jurors. *See* 6 Wayne R. LaFave et al., *Criminal Procedure* § 22.3(a) (3rd ed. 2015). The purpose of voir dire questioning is to determine whether potential jurors can impartially consider the facts of a case and apply the law as directed by the court. *Johnson*, 122 Nev. at 1354, 148 P.3d at 774. Questions "aimed more at indoctrination than acquisition of information" concerning bias may be excluded by the court conducting voir dire. *Hogan*, 103 Nev. at 23, 732 P.2d at 423.

Here, Williams' question probed an issue not presented in his case and seemed designed to address broader social and political issues. With regard to Williams' citation to *Peña-Rodriguez*, it is undoubtedly crucial that the court seek to identify and root out racial prejudice in criminal trials. The cited portions of *Peña-Rodriguez*, however, are broad condemnations of racial prejudice in the legal system, but that case dealt specifically with post-verdict impeachment of jurors making statements evidencing racial bias. *See* 137 S. Ct. at 861-62, 867-68. Consequently, *Peña-Rodriguez* provides no clear prohibition against the action taken by the district court, nor is there any indication of actual racial bias by the jurors in this case.

Furthermore, the court imposed no prohibition on questions concerning racial prejudice, and merely requested that Williams rephrase

the question to probe for prejudice without centering that probe on a contentious political issue. As a result, the district court did not abuse its discretion in denying the inclusion of Williams' requested question in the jury questionnaire.

*The district court did not abuse its discretion in failing to act further on Williams' request to withdraw his trial counsel*

Williams argues that the adequacy of his representation was undermined because the district court failed to consider his motion to replace counsel. He further argues that the court erred by not allowing him to expand on his conflicts with counsel, and that substituting counsel would not have created any delay because the trial date had been moved to almost a year later. We do not believe Williams' Sixth Amendment rights were undermined in this case, and conclude that the district court did not abuse its discretion.

A court's decision to deny a defendant's request to withdraw counsel is reviewed under the abuse of discretion standard. *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). Abuse of discretion, in this context, is determined by a three-factor test, consisting of: (1) the extent of the conflict between the attorney and client, (2) the timeliness of the defendant's motion, and (3) the adequacy of the trial court's inquiry into the complaints. *Id.* at 968-69, 102 P.3d at 576-78. A defendant is not entitled to substitution of counsel absent a showing of "sufficient cause," but the court may not deny a motion to substitute counsel where there has been a "complete collapse of the attorney-client relationship." *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 842 (2005).

In evaluating the extent of the conflict between Williams and his attorney, it is exceptionally slight in comparison to cases where we have

 

found this factor to weigh in favor of the appellant. In *Young*, the court found extensive conflict because the defendant had complained about his attorney on five separate occasions, filed two motions to have his counsel withdrawn in which he described a complete breakdown of communication, consistently sent notes to the district court saying his attorney had not come to the jail to see him, and the attorney subsequently violated the district court's order to visit Young weekly. *Young*, 120 Nev. at 969, 102 P.3d at 576. Here, Williams only indicated displeasure with his attorney on one occasion, belligerently raising the issue in open court.

Furthermore, the nature of the conflict does not support a finding of a complete breakdown of communication. The only issues Williams raised were the fact that he did not understand why his right to a speedy trial had been waived by counsel filing a pre-trial writ petition, and that he did not trust his attorney as a result.[1] However, the court was able to immediately explain that the pre-trial writ petition waived the right to a speedy trial, and a dispute over defense strategy alone does not amount to a conflict of interest, *Gallego v. State*, 117 Nev. 348, 363, 23 P.3d 227, 237-38 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011). Additionally, simply losing confidence in defense counsel does not create a genuine conflict between an attorney and client when the defendant cannot provide legitimate reasons for the loss of confidence in his counsel. *Id*. Even in his briefs, Williams raises no specific disagreements he had with trial counsel, or how he was negatively impacted

---

[1]While it is true that Williams was removed from the court for his belligerence when he was requesting substitute counsel, nothing prevented him from re-raising the issue or enumerating his additional concerns in greater detail, if there were any.

by counsel's decisions. As a result, the extent of the conflict is minor and this factor weighs in favor of the State.

The question of timeliness, however, weighs in favor of Williams. Timeliness is a balancing of the defendant's right to counsel with the delay that would accompany the substitution of counsel. *Young*, 120 Nev. at 969-70, 102 P.3d at 577. In the present case, Williams raised his motion at the calendar call for his original trial date, but after his right to a speedy trial had already been waived. As a result, there would be nearly a year before trial, and it does not appear any delay would have resulted.

Finally, the court's inquiry, in light of Williams' failure to raise any real grounds on which counsel would need to be replaced, was adequate. This court, in *Young*, indicated that thorough inquiry into a conflict is required when the trial court lacks sufficient grounds on which to base a decision. 120 Nev. at 970, 102 P.3d at 577. However, Williams only raised this issue once and in so doing only generically claimed that he did not trust his counsel. As a result, the instant case can be distinguished from factual situations in which a thorough inquiry into a defendant's allegations were required. *See Young*, 120 Nev. at 971, 102 P.3d at 577 (addressing a case in which the defendant raised the issue at least five times and alleged the breakdown of communication in some detail); *United States v. Moore*, 159 F.3d 1154, 1160-61 (9th Cir. 1998) (addressing a case in which the issue was raised at least five times and the attorney explicitly said that, without substituting counsel, his client's Sixth Amendment rights would be violated). Rather, the present case is comparable to *Garcia*, a case that involved less persistent or severe allegations, in which this court found that merely asking the attorney to orally explain the complaints leveled against him by the defendant in a detailed, written motion to be an adequate

inquiry excusing the lack of a hearing. *See Garcia*, 121 Nev. at 336-37, 339, 113 P.3d at 842-43, 844. The parallel can further be made between Garcia's refusal to discuss the matter with the court, *id.* at 339, 113 P.3d at 844., and Williams becoming belligerent, preventing further discussion of the matter at the time.

The court made no in-depth inquiry into Williams' claims because Williams' sole complaint turned on a clarification as to why his right to a speedy trial had been waived, which the district court was able to immediately explain to him. Furthermore, at no point did Williams present any facts that would raise a question over the adequacy of counsel or indicate a breakdown in communication, despite having nearly a year between his exchange with the trial court and his trial, during which he could have filed a formal motion or contacted the court with concerns over the adequacy of his representation. Williams asserted no serious conflict with counsel, certainly falling short of the sufficient cause required for substitution. As a result, there were no grounds that would colorably require substitution and a substantive inquiry was unnecessary.

## *CONCLUSION*

We conclude that the State presented sufficient evidence to sustain Williams' convictions on all six counts of assault with a deadly weapon. The district court similarly did not abuse its discretion in rejecting Williams' proposed question to the jury, as it raised issues which distracted from the proceedings rather than ensured the detection of prejudice, or in

failing to further investigate Williams' request to substitute counsel, as he never alleged a conflict that would have required substitution. We, therefore,

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Stiglich

cc:   Hon. Kerry Louise Earley, District Judge
Gaffney Law
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A