*965
 
 OPINION
 

 Per Curiam:
 

 Appellant Terrell Cochise Young appeals from his judgment of conviction. Young argues that the district court abused its discretion in denying his motion for substitution of counsel. Young maintains that the district court failed to conduct an adequate inquiry before dismissing his motion.
 

 We conclude that the district court abused its discretion when it denied Young’s motion to dismiss and appoint new counsel. We hold that three factors are relevant in reviewing a district court’s denial of a motion for substitution of counsel: (1) the extent of the conflict between the defendant and counsel, (2) the adequacy of the court’s inquiry into the defendant’s complaint, and (3) the timeliness of the motion and the extent of any inconvenience or delay. Following an analysis of these three factors, we conclude that the district court abused its discretion in denying Young’s motion. We therefore reverse Young’s conviction and remand for appointment of new counsel and a new trial.
 
 [3]
 

 FACTS
 

 Young was charged with one count of burglary while in possession of a firearm, one count of conspiracy to commit robbery and/or kidnapping and/or murder, four counts of robbery with use
 
 *966
 
 of a deadly weapon, four counts of first-degree kidnapping with use of a deadly weapon, and four counts of murder with use of a deadly weapon. Thereafter, the State filed a notice of its intent to seek the death penalty. Young was ultimately convicted, pursuant to a jury verdict, of all the charges and was sentenced to numerous prison terms, including several terms of life without the possibility of parole.
 

 On October 6, 1998, after the public defender’s office was conflicted out of Young’s case because of its simultaneous representation of Young’s codefendant, Donte Johnson, the district court appointed Lew Wolfbrandt and Marty Hastings to represent Young.
 

 On May 12, 1999, Young filed a motion to dismiss Wolfbrandt and Hastings and appoint new counsel. Young complained of counsel’s failure to communicate with him, failure to file a motion for bail, refusal to speak with Young’s friends and family, and failure to file discovery requests. At the hearing on his motion on June 9, 1999, Young complained that Wolfbrandt had not been to see him in the eight months since his appointment. Young said that he felt that Wolfbrandt was not assisting him since he had not spoken with anyone in his defense. Young indicated that he was unable to communicate with Wolfbrandt and stated that there had been a complete lack of communication with Wolfbrandt for eight months. Young insisted that he could not go to trial with Wolfbrandt representing him. Wolfbrandt responded that he always accepted Young’s calls when he was in the office; he had spoken with Young’s aunt and girlfriend; he had an investigator working on the case; Hastings had visited Yrang several times in jail; and they were ready for trial, although they were receiving more evidence from the State. Wolfbrandt also admitted that for safety reasons he had not provided Young with a copy of the discovery, but that at Young’s insistence he was beginning to copy his file. The district court denied Young’s motion and told Young that if he was still concerned at the time of calendar call, he could talk to the court about it at that time. Young continued to protest, and the district court responded: “I did hear what you said. If you feel they are not ready for trial and will not represent you on the 17th (referring to the June 17, 1999, calendar call) then I will not go to trial on that date.’ ’
 

 At a later hearing on another matter in Young’s case, on June 23, 1999, Young again complained that he needed a new attorney because “me and Mr. Wolfbrandt have no communication. I just — I don’t think he is fighting for my life.’ ’ The hearing continued, and Young insisted that the district court was not listening to him. When Young was given the opportunity to speak, he claimed that Wolfbrandt was not working to save his life. He also stressed that Wolfbrandt had only been to see him once during the
 
 *967
 
 preceding eight months. Wolfbrandt explained that Young did not seem to understand that they were working on his case from outside the jail. The district court ordered Wolfbrandt to see Young at least once a week until August 30, 1999, the date tentatively set for trial. The district court then told Young that his motion would be heard at the time of trial.
 

 Thereafter, Young filed another motion to dismiss Wolfbrandt and Hastings and appoint new counsel, with a memorandum to the court. Young repeated his previous complaints and added that Wolfbrandt had failed to investigate, failed to file motions, and had violated the district court’s order of weekly visitation. At calendar call on August 17, 1999, Young complained that he should be permitted to argue his motion. He was allowed to continue, and he repeated all the complaints he had already made to the district court with the addition of mentioning Wolfbrandt’s violation of the order for weekly visits. Young complained that Wolfbrandt was ineffective. He stated that Wolfbrandt had not been to see him during the initial eight months after his appointment, even though Young’s family members called Wolfbrandt requesting that he visit Young. Young questioned how his counsel could be ready for trial when he had never even had a conversation with Wolfbrandt about the trial. Young insisted they were not ready. Young expressed discontent with Wolfbrandt’s failure to file any motions on his behalf. Young also explained that in the ten weeks that had passed since the district court ordered Wolfbrandt to visit Young weekly, Wolfbrandt had only visited once. Young indicated the visit occurred only after Young had written a letter to the district court complaining, and the district court had called Wolfbrandt. Young expressed his frustration with the lack of communication.
 

 Wolfbrandt explained that he did not frequently go to the jail, but that he had done a tremendous amount of work on the case. He represented that they were ready to go to trial. Again, Young began to protest, and the district court cut him short, stating, “That is enough, Mr. Young.” The district court passed the matter over to the following hearing.
 

 During a subsequent calendar call on August 26, 1999, Young asked if he was going to be allowed to argue his motion to dismiss his counsel. The district court stated that Wolfbrandt would continue as attorney of record and explained to Y»ung that his motion would be passed over until the first day of trial.
 

 On August 30, 1999, Young was again permitted to argue his motion to dismiss counsel. He complained that Wolfbrandt should be dismissed for ineffectiveness, laziness, and unprofessional behavior. Young then proceeded to repeat all his previous complaints, adding that Wolfbrandt’s prior position as a law clerk for the judge was preventing the court from dismissing him. Wolfbrandt ex
 
 *968
 
 plained to the district court that he had filed all the motions he considered to be meritorious, including a motion to suppress; he had adopted all the motions that were filed in Young’s coconspir-ator’s case; he had not visited Young weekly, but at the visits that occurred, he obtained the information he needed; he had some conversations with Young’s family and friends but had not discussed all matters because of attorney-client privilege; he had accepted all calls from Young when he was in his office; he had provided Young with a copy of virtually all the discovery and the transcripts from Young’s coconspirator’s trial; and he was ready to go to trial. The district court denied Young’s motion to discharge Wolfbrandt.
 
 [4]
 

 DISCUSSION
 

 Request for substitution of counsel
 

 We review the denial of a motion for substitution of counsel for abuse of discretion.
 
 [5]
 
 A defendant’s right to substitution of counsel is not without limit.
 
 [6]
 
 Absent a showing of adequate cause, a defendant is not entitled to reject his court-appointed counsel and request substitution of other counsel at public expense.
 
 [7]
 
 While we have previously held that “[wjhere a motion for new counsel is made considerably in advance of trial, the [district] court may not summarily deny the motion but must adequately inquire into the defendant’s grounds for it,”
 
 [8]
 
 we have not specifically addressed what constitutes an adequate inquiry.
 

 Young cites to authority from the Court of Appeals for the Ninth Circuit,
 
 [9]
 
 suggesting that there are three factors to consider in reviewing a district court’s denial of a motion for substitution of counsel. The three factors, as set forth in
 
 United States v. Moore,
 
 are: “(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion.”
 
 [10]
 
 Importantly, the court noted that while a defendant is not entitled to have a particular at-
 
 *969
 
 tomey serve as counsel, if the complete collapse of the attorney-client relationship is evident, a refusal to substitute counsel violates a defendant’s Sixth Amendment rights.
 
 [11]
 
 We have not previously adopted the standard enunciated by the Ninth Circuit; however, we find the three-part inquiry required by the Ninth Circuit to be a reasonable approach. We therefore hold that in reviewing a denial of substitution of counsel, we will consider the three factors enumerated above.
 

 In applying this three-factor analysis, we conclude all three factors weigh in favor of our determination that the district court abused its discretion in denying Young’s motion for substitution of counsel.
 

 Extent of conflict
 

 There is no question that there was a significant breakdown in the relationship between Young and Wolfbrandt and Hastings. On five separate occasions, Young complained to the district court about his counsel. Twice, Young filed motions for substitution of counsel, describing a significant conflict and complete breakdown of communication. Young also consistently complained to the district court that Wolfbrandt had not been to see him at the jail. Even after the district court ordered Wolfbrandt to visit Young weekly, Wolfbrandt violated the district court’s order and visited him only once.
 

 In
 
 Moore,
 
 the Ninth Circuit found that an irreconcilable conflict existed upon an examination of similar facts.
 
 [12]
 
 In that particular case, the defendant complained on four separate occasions that he could not communicate with his attorney and that his attorney had failed to properly investigate and prepare for trial.
 
 [13]
 
 The court found that “in consistent, persistent representations to the court, Moore presented strong evidence of an irreconcilable conflict.”
 
 [14]
 
 Here, our conclusion is the same. Young’s representations to the court, combined with his attorney’s flagrant violation of the district court’s order to visit Young on a weekly basis constitute strong evidence of an irreconcilable conflict.
 

 Timeliness of motion
 

 In
 
 Moore,
 
 the court evaluated the timeliness of a motion to substitute counsel by balancing a defendant’s constitutional right to counsel against the inconvenience and delay that would result from
 
 *970
 
 the substitution of counsel.
 
 [15]
 
 In
 
 Moore,
 
 the court found a motion to substitute counsel timely when the defendant made multiple motions, the first of which was over a month prior to the start of trial.
 
 [16]
 

 Young made multiple motions for substitute counsel. Notably, Young made his first motion to substitute counsel on May 12, 1999, over three and one-half months before his trial started. While it is true that Young’s last attempt for substitution of counsel was made on the first day of trial, we note that this was not the first time that Young attempted to have his counsel replaced. Additionally, it was the district court’s repeated continuance of Young’s motion that created the need for Young to argue his motion on the eve of trial. There is no proof in the record that Young filed his motions for dilatory tactics or bad-faith interference with the administration of justice. Also, had the district court inititally granted Young’s motion, the extent of resulting inconvenience or delay in his trial would have been minimal, if at all. Thus, we conclude Young’s motions were timely.
 

 Adequacy of inquiry
 

 As the court did in
 
 Moore,
 
 we conclude that the district court should have made a more thorough inquiry into the substance of Young’s alleged conflict with Wolfbrandt and Hastings, as Young’s own description of the problem and the district court’s observations provided an insufficient basis for reaching an informed decision. In
 
 Moore,
 
 the defendant raised the irreconcilable-differences issue on four separate occasions before the district court engaged in any inquiry on the issue.
 
 [17]
 
 At that point, the trial court allowed both parties to speak, and made general inquiries into the nature of the conflict, but still failed to examine the severity of the discord between. Moore and his counsel.
 
 [18]
 
 It was only after the district court received a letter from Moore describing the conflict that the court endeavored to make a more extensive analysis.
 
 [19]
 
 The Ninth Circuit found these inquiries insufficient because the district court still failed to address any of the factors outlined in
 
 United States
 
 v.
 
 D'Amore.
 

 [20]
 

 
 *971
 
 Likewise, the district court’s inquiry into the irreconcilable differences between Young and Wolfbrandt and Hastings was inadequate. Although on five occasions Young’s motion for substitution of counsel was raised before the district court, the district court conducted an exceedingly abbreviated inquiry of the conflict at issue. For example, the district court failed to inquire in any depth about Young’s complaints regarding a lack of communication, Wolfbrandt’s failure to file any pretrial motions, Wolfbrandt’s failure to contact any witnesses, and more importantly, why Wolfbrandt had violated the district court’s order to visit Young weekly. The district court also did not explore the degree to which the lack of communication and animosity between Young and his counsel had prevented his counsel from adequately preparing for trial.
 

 Additionally, the district court did not inquire into the length of the continuance that would be required for new counsel to prepare Young’s case, nor did the district court attempt to gauge the degree of inconvenience that a delay in Young’s case would cause.
 
 [21]
 

 In our view, the district court need not invade the attorney-client privilege unless absolutely necessary; however, the district court’s respect for the privilege should not prevent it from engaging in a genuine inquiry into the quality of defense counsel’s representation. We consider the adequacy of the district court’s inquiry a crucial component and one we will not overlook on appellate review. Thus, the district court’s failure to conduct a more adequate inquiry was error.
 

 We wish to stress that the defendant in a criminal case may not, as a matter of law, create a conflict requiring substitution of appointed counsel under the first factor. Rather, we place the onus upon defense counsel to establish and attempt in good faith to maintain the attorney-client relationship. In turn, the district court is charged with stewardship, in line with the three factors discussed above, over counsel’s good-faith participation in the defense.
 

 Miscellaneous claim of error
 

 We also wish to address one instance of prosecutorial misconduct that occurred during the penalty phase of Young’s trial. We note that Young failed to object to this particular instance of misconduct. Generally, for us to consider whether a prosecutor’s remarks were improper, the defendant must have objected to them at
 
 *972
 
 the time, allowing the district court to rule upon the objection, admonish the prosecutor, and instruct the jury.
 
 [22]
 
 Under NRS 178.602, we may nevertheless address the claim if it amounts to plain error that affected his substantial rights.
 
 [23]
 

 Young argues that the prosecutor improperly recited a passage from the Book of Proverbs in the Bible: “for there shall be no rewards to evil man. The candle of the wicked shall be put out.” The prosecutor is basically saying that the Bible requires the death penalty for the defendant once he is found guilty. This is unacceptable. We agree with the court in
 
 Romine v. Head
 
 that “[t]he possibility always exists that some jurors will be at least as impressed by Biblical authority as by the authority of a court or legal scholar.”
 
 [24]
 
 There is ample opportunity for quotation of biblical passages in the courtroom, but not when the passage directs the finding that the jury is considering. However, we conclude that the specific instance of misconduct cited by Young does not rise to the level of plain error.
 

 CONCLUSION
 

 Weighing all of the factors, we conclude that the district court abused its discretion in denying Young’s repeated motions for substitution of counsel. Accordingly, we reverse and remand this case to the district court for appointment of new counsel and for a new trial.
 

 [3]
 

 Young presents several additional claims that we need not address given our decision. Young argues that the district court erred in: (1) denying his motion to suppress, (2) denying his right to a fair and impartial jury of his peers, (3) denying his right to a fair and impartial jury because of failure to dismiss a potential juror for cause, (4) permitting evidence of prior bad acts, (5) holding numerous off-the-record conferences, (6) denying his right to a fair trial by requiring him to wear a stun belt and shackles, (7) forcing his mother to testify in shackles, and (8) instructing the jury with erroneous and unconstitutional instructions. Young also argues that gross prosecutorial misconduct affected both the penalty and guilt phases of his trial, and that his conviction should be reversed because of cumulative error. Finally, Young claims that there was insufficient evidence to convict him. We have considered this argument and conclude that it lacks merit.
 

 [4]
 

 At trial, Young engaged in repetitive disruptive tactics, including personal attacks upon his counsel. Because these events took place after the district court denied Young’s motion for substitution of counsel, they are irrelevent to our decision and are not discussed. We do not condone such tactics and note Young’s conduct negatively influenced consideration of his appeal.
 

 [5]
 

 Gallego
 
 v.
 
 State,
 
 117 Nev. 348, 362, 23 P.3d 227, 237 (2001).
 

 [6]
 

 Id.
 

 [7]
 

 Id.
 

 [8]
 

 Id.
 
 at 363, 23 P.3d at 237.
 

 [9]
 

 U.S. v. Moore,
 
 159 F.3d 1154, 1158-59 (9th Cir. 1998).
 

 [10]
 

 Id.
 

 [11]
 

 Id.
 
 at 1158.
 

 [12]
 

 Id.
 
 at 1159-60.
 

 [13]
 

 Id.
 
 at 1156.
 

 [14]
 

 Id.
 
 at 1159.
 

 [15]
 

 Id.
 
 at 1161 (citing
 
 United States
 
 v.
 
 D'Amore,
 
 56 F.3d 1202, 1206 (9th Cir. 1995)).
 

 [16]
 

 Id.
 
 at 1161.
 

 [17]
 

 Id.
 
 at 1160.
 

 [18]
 

 Id.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 at 1161 (citing
 
 D’Amore
 
 wherein the Ninth Circuit utilized four factors to assess the adequacy of the trial judge’s inquiry: (1) whether the trial judge considered the length of continuance needed for a new attorney to prepare, (2) the degree of inconvenience the delay would cause, (3) the degree animosity between the attorney and client prevented adequate preparation for trial, and (4) why the motion to substitute counsel was not made earlier).
 

 [22]
 

 Riley v. State,
 
 107 Nev. 205, 218, 808 P.2d 551, 559 (1991).
 

 [23]
 

 NRS 178.602 provides, “Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.”
 
 See also Rowland v. State,
 
 118 Nev. 31, 38, 39 P.3d 114, 118 (2002).
 

 [24]
 

 253 F.3d 1349, 1368 (11th Cir. 2001).