140 Nev., Advance Opinion 24

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

KWAME DE-MARKQUISE MORRISON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 85868-COA

FILED

APR 04 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault upon a minor under 14 years of age and one count of use of a minor under the age of 14 in producing pornography. Eighth Judicial District Court, Clark County; Mary Kay Holthus, Judge.

*Affirmed.*

Law Office of Amanda Pellizzari, LLC, and Amanda Pellizzari, Las Vegas, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Alexander G. Chen and Karen L. Mishler, Chief Deputy District Attorneys, Clark County, for Respondent.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

24-11870

*OPINION*

By the Court, WESTBROOK, J.:

A jury convicted appellant Kwame De-Markquise Morrison of three counts of sexual assault upon a minor under 14 years of age and one count of use of a minor under the age of 14 in producing pornography. Morrison contends that the district court committed reversible error by instructing the jury that a lack of knowledge or a mistake as to the victim's age is not a defense to a charge of using a minor in producing pornography. We agree that the instruction was inaccurate because the State is required to prove that the defendant "knowingly" used "a minor" in producing pornography. *See* NRS 200.710(1). Nevertheless, for purposes of determining the appropriate penalty for the offense, the State is not required to prove that the defendant knew or should have known that the victim was under the age of 14. *See* NRS 200.750(2). Here, because Morrison admitted that he believed A.M. was 16 years old—and therefore a minor—during their sexual relationship, the district court's instructional error was harmless beyond a reasonable doubt. We also reject Morrison's remaining claims on appeal, and accordingly, we affirm Morrison's judgment of conviction.

*FACTUAL AND PROCEDURAL HISTORY*

In 2016, 21-year-old Morrison initiated a sexual relationship with A.M., who was only 12 years old at the time. In June 2017, A.M. discovered that she was pregnant and disclosed the relationship to her mother, who filed a police report that identified Morrison as A.M.'s sexual partner. In October 2017, shortly after turning 13 years old, A.M. gave birth to a boy who was later adopted.

 

Thereafter, A.M. participated in a forensic interview with Las Vegas Metropolitan Police Department (LVMPD) Detective Becky Salkoff. During her interview, A.M. identified Morrison as her sexual partner. Detective Salkoff then conducted two recorded forensic interviews with Morrison in July and August 2018. During the interviews, Morrison admitted he had sex with A.M. two to three times but stated that he believed A.M. was 16 years old.[1] Subsequently, Detective Salkoff subpoenaed Morrison's Facebook records, which included sexually explicit pictures that A.M. had taken of herself and sent to him at his request. Detective Salkoff also collected DNA from Morrison, A.M., and A.M.'s child, which confirmed that Morrison was the child's father.

The State ultimately charged Morrison by indictment with six counts of sexual assault upon a minor under 14 years of age and one count of use of a minor under the age of 14 in producing pornography. Morrison's jury trial was scheduled for early June 2022, with calendar call one week prior to trial. Three days before calendar call, Morrison filed a motion to dismiss his appointed counsel in which he requested the appointment of new counsel. At calendar call, the district court denied Morrison's request to appoint new counsel. Although Morrison initially indicated that he might be interested in representing himself at trial, he subsequently told the court that he did not want to be canvassed to represent himself. Though his jury trial was continued, at no point thereafter did Morrison ever raise any additional concerns about counsel, nor did he ever renew his request to represent himself.

---

[1]Although the parties did not include the interview transcripts in the record on appeal, the closing arguments reflect that Morrison made these admissions during the interviews.

Morrison's three-day jury trial commenced in October 2022. A.M. testified that Morrison lived in the house next door to her and knew some of her other siblings. She first met Morrison in August 2016, on her first day of sixth grade when she and her siblings walked past his house on their way to school. A.M. was 11 years old at the time.[2]

According to A.M., her first sexual interaction with Morrison occurred when she was playing with her younger siblings in front of her house. Morrison asked her to come over to him, gave her a candy bar, and then propositioned her for sex. Although A.M. could not recall whether they had sex on that occasion, A.M. testified in detail about five other incidents that occurred while she was between the ages of 12 and 13. A.M. stated that on each occasion, Morrison inserted his fingers into her vagina and then had sexual intercourse with her. A.M. testified that the first incident occurred on a bathroom floor at Morrison's house, the second incident occurred in Morrison's bedroom, the third incident occurred behind a McDonald's dumpster, and the fourth incident occurred at her house. The fifth incident occurred in November or December 2017 in her backyard, after the birth of her son.[3]

Next, the State published an exhibit containing Morrison's Facebook communications with A.M. and asked her about several of the messages. A.M. testified that, at Morrison's request, she sent him sexually explicit pictures of herself over Facebook, which included nude photos of her breasts and vagina. A.M. testified that in January 2017, when she was 12

---

[2]The State introduced into evidence A.M.'s birth certificate, establishing that she was born in October 2004.

[3]The State also introduced into evidence A.M.'s son's birth certificate, establishing that he was born in October 2017 when A.M. was 13 years old.

years old, Morrison sent her a message directing her to "[t]urn on the light," and she sent him a photo in response. A.M. also testified about a message she received after she sent Morrison a photo, where Morrison told her, "Open your legs more. You don't have a flash." Finally, A.M. testified about a message she received from Morrison in December 2017, when she was 13 years old, requesting another photo of her vagina.

The State presented testimony from two LVMPD forensic scientists establishing that Morrison was the father of A.M.'s son. Finally, Detective Salkoff testified about her investigation into Morrison's case. She testified about her forensic interview with A.M.; her collection of DNA from A.M., A.M.'s son, and Morrison; and her two recorded interviews with Morrison. During her testimony, the State published the transcripts of Detective Salkoff's interviews with Morrison and played the recordings of those interviews for the jury. Although neither party included those transcripts in the record on appeal, the State's closing argument indicates that Morrison told Detective Salkoff that he had sex with A.M. two or three times, and Morrison did not object to that representation of the evidence. Likewise, Morrison argued in closing that, in his statement to Detective Salkoff, "he told you he believed she was 16. And I'm sure that he believed that a 16 year old can consent to sex, as that is the law." Finally, the State's rebuttal closing argument reflects that Morrison told Detective Salkoff he had sex with A.M. by a dumpster at McDonald's and on his bathroom floor, corroborating two of the incidents to which A.M. testified. Morrison did not object to this description of the evidence either.

While settling jury instructions, the State proposed an instruction providing that a defendant's lack of knowledge or mistake as to the victim's age is not a defense to *either* of the charged crimes—sexual assault upon a minor under the age of 14 *or* use of a minor under the age of

14 in the production of pornography. Although Morrison agreed that the instruction was correct as applied to the sexual assault charges, he objected to its application to the pornography charge. Over Morrison's objection, the district court included the State's proposed jury instruction for all charges.

Ultimately, the jury found Morrison guilty of three counts of sexual assault upon a minor under 14 years of age and one count of use of a minor under the age of 14 to produce pornography. The jury acquitted Morrison of the remaining three sexual assault charges. The district court sentenced Morrison to imprisonment for life with the possibility of parole after 35 years for each sexual assault conviction and life with the possibility of parole after 10 years for using a minor under 14 to produce pornography, with all sentences to run concurrently. Morrison timely appealed.

## ANALYSIS

Morrison contends that the district court incorrectly instructed the jury that a lack of knowledge or mistake of fact as to the victim's age is not a defense to the charge of use of a minor in producing pornography. In addition, he argues that the district court abused its discretion by denying his motion to dismiss counsel and by failing to conduct a *Faretta*[4] canvass, and that the State committed prosecutorial misconduct by knowingly allowing A.M. to testify falsely and by improperly commenting on the evidence. We address each argument in turn.

*Although the district court provided an inaccurate jury instruction, the error was harmless beyond a reasonable doubt*

Morrison argues that the district court committed reversible error when it gave the following instruction to the jury:

> The lack of knowledge of the age, or a reasonable
> mistake as to the age, of a child victim of sexual

---

[4]*Faretta v. California*, 422 U.S. 806 (1975).

assault of a minor under the age of fourteen and use of a minor under the age of fourteen in producing pornography is not a defense to the crimes of sexual assault of a minor under the age of fourteen and use of a minor under the age of fourteen in producing pornography.

Morrison contends that this instruction misstated NRS 200.710(1), which criminalizes "knowingly" using "a minor" to produce pornography.

District courts have "broad discretion" in settling jury instructions; therefore, this court generally reviews a district court's decision regarding jury instructions for abuse of discretion or judicial error. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). However, whether a jury instruction is an accurate statement of the law is reviewed de novo. *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007). Additionally, when interpreting a statute, this court will "interpret clear and unambiguous statutory language by its plain meaning unless doing so would lead to an unreasonable or absurd result." *Moore v. State*, 136 Nev. 620, 622-23, 475 P.3d 33, 36 (2020).

Morrison was charged under NRS 200.710(1) with using a minor in producing pornography. NRS 200.710(1) provides that "[a] person who *knowingly* uses, encourages, entices or permits a minor to simulate or engage in or assist others to simulate or engage in sexual conduct to produce a performance is guilty of a category A felony and shall be punished as provided in NRS 200.750." (Emphasis added.) For purposes of this statute, the term "minor" means an individual under the age of 18. *State v. Hughes*, 127 Nev. 626, 628-29, 261 P.3d 1067, 1069 (2011). Morrison argues that the use of the word "knowingly" in NRS 200.710(1) means that the State must prove that Morrison knew or had reason to know that A.M. was a minor at the time of the crime. We agree.

As the Nevada Supreme Court explained in *Garcia v. Sixth Judicial District Court*, "[w]hen an intent requirement is supplied in the statute, in order to sustain a conviction, that intent must be proven as to each element of the crime." 117 Nev. 697, 701, 30 P.3d 1110, 1112 (2001). In *Garcia*, the supreme court addressed NRS 202.055, which criminalizes the sale of alcohol to persons under 21 years of age. Because NRS 202.055 made it unlawful to "knowingly . . . [s]ell[ ] . . . an alcoholic beverage to any person under 21 years of age," the court concluded that the statute required proof of "either actual or constructive knowledge of the purchaser's age." *Id.* at 698, 30 P.3d at 1111. In reaching this conclusion, the supreme court distinguished NRS 202.055 from "other age-specific statutes" that did not contain a knowledge element, including NRS 202.2493(2) (sale of tobacco to persons under 18), NRS 200.366-.368 (sexual assault and statutory sexual seduction), and NRS 463.350 (presence of persons under 21 years in gaming institutions). *Id.* at 701 n.9, 30 P.3d at 1113 n.9. The supreme court pointed out that, unlike the other statutes, "a defendant's state of mind ('knowingly') has expressly been included in NRS 202.055, thus requiring a defendant's knowledge of each element to be proven." *Id.* at 701-02, 30 P.3d at 1113.

The United States Supreme Court reached a similar conclusion in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). There, the Court analyzed a statute that imposes a criminal penalty if the defendant "*knowingly* transfers, possesses, or uses, without lawful authority, *a means of identification of another person*." *Id.* at 647 (quoting 18 U.S.C. § 1028A(a)(1) (emphases in original)). The Supreme Court concluded that the knowledge requirement applied to each element of the statute and, as a result, the government was required to prove that the defendant knew that the means of identification belonged to someone else. *Id.* at 657.

The Court explained that in ordinary English usage, "whe[n] a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.* at 650. For example, if someone says that "a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy *and* that the toy belongs to his sibling." *Id.* at 651 (emphasis in original). Because courts interpret criminal statutes in accordance with this ordinary English usage, courts "ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 652. Therefore, the Supreme Court determined that the modifying adverb "knowingly" in § 1028A(a)(1) applied to the statute's transitive verbs ("transfers, possesses, or uses") *and* the verbs' object ("a means of identification of another person"). *See id.* at 650.

Applying this reasoning to the plain language of NRS 200.710(1), we conclude that the word "knowingly" applies to each element of the crime of use of a minor in the production of pornography, including the transitive verbs ("uses, encourages, entices or permits") *and* the verbs' object ("a minor"). Therefore, to obtain a conviction under NRS 200.710(1), the State must prove, beyond a reasonable doubt, that the defendant knew or had reason to know that the victim was a minor—under the age of 18—at the time of the crime.

The State posits that because NRS 200.710(1) is intended to protect children from sexual abuse, the term "knowingly" should be interpreted like the term "willfully" to require only general intent. To support this argument, the State relies on *Jenkins v. State,* 110 Nev. 865,

877 P.2d 1063 (1994), which held that a reasonable mistake of fact as to the age of a victim is not a defense to the crime of statutory sexual seduction, and *Moore v. State*, 136 Nev. 620, 475 P.3d 33 (2020), which held that a mistaken belief as to the victim's age is not a defense to the crime of lewdness with a child under the age of 16.

However, both *Jenkins* and *Moore*—and the statutes cited therein—are distinguishable. Unlike the crime of use of a minor in the production of pornography, the crimes of statutory sexual seduction and lewdness do not contain an express knowledge requirement. Statutory sexual seduction is a general intent crime,[5] which requires only "an intent to do the act, rather than any intent to violate the law or injure another." *Jenkins*, 110 Nev. at 870, 877 P.2d at 1066. And while the crime of lewdness with a child under 16 is a specific intent crime,[6] the structure of that statute differs from NRS 200.710(1). In NRS 201.230, the age element *precedes* the specific intent element, and the "plain language [does not] otherwise require the State to prove that the defendant knew or should have known that the child was under the age of 16." *Moore*, 136 Nev. at 623-24, 475 P.3d at 36.

---

[5]NRS 200.364(10) ("'Statutory sexual seduction' means ordinary sexual intercourse, anal intercourse or sexual penetration committed by a person 18 years of age or older with a person who is 14 or 15 years of age and who is at least 4 years younger than the perpetrator.").

[6]NRS 201.230(1)(a) (defining the crime of lewdness with a child under 16 as occurring when a person "18 years of age or older . . . willfully and lewdly commits any lewd or lascivious act . . . upon or with the body . . . of a child under the age of 16 years, *with the intent of* arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child" (emphasis added)).

Furthermore, unlike the term "willfully," which can be interpreted to refer to a general intent crime in the context of child abuse statutes, *see Jenkins*, 110 Nev. at 870, 877 P.2d at 1066, the term "knowingly" requires actual or constructive knowledge, *see* NRS 193.017 ("'Knowingly' imports a knowledge that the facts exist which constitute the act or omission of a crime, and does not require knowledge of its unlawfulness. Knowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent person upon inquiry."). To interpret the word "knowingly" as imposing only a general intent requirement would conflict with the term's statutory definition. *See Williams v. State, Dep't of Corr.*, 133 Nev. 594, 596, 402 P.3d 1260, 1262 (2017) ("This court 'avoid[s] statutory interpretation that renders language meaningless or superfluous.'" (quoting *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011))).

Nevertheless, while the State was required to prove beyond a reasonable doubt that Morrison knew or should have known that A.M. was a minor under the age of 18 to impose criminal liability under NRS 200.710(1), the State was *not* required to prove that Morrison knew or should have known that A.M. was, in fact, under the age of 14 for purposes of determining the appropriate penalty at sentencing. NRS 200.710(1) provides that a defendant who is guilty of using a minor in the production of pornography shall be "punished as provided in NRS 200.750." NRS 200.750 sets forth the two possible penalties for a violation of NRS 200.710(1), depending on whether the minor is "14 years of age or older" or "less than 14 years of age."

Here, the State charged Morrison under NRS 200.750(2), on the basis that A.M. was "less than 14 years of age" when the crime was committed. Yet, unlike NRS 200.710(1), NRS 200.750 does not contain the

word "knowingly." And where the plain language of NRS 200.750 does not include the element of knowledge, we agree with the State that requiring it to prove the defendant knew or should have known that the victim was under the age of 14 would contravene Nevada's strong public policy of protecting minors from sex crimes. *See Moore*, 136 Nev. at 623-24, 475 P.3d at 36-37 (holding that the State need not prove that the defendant knew or should have known that a minor was under the age of 16 to obtain a conviction for lewdness where the statute's plain language did not include the element of knowledge).

Although the State was not required to prove that Morrison knew or had reason to know that A.M. was under the age of 14 to impose the sentence set forth in NRS 200.750(2), we conclude that the jury instruction given in this case was inaccurate insofar as it instructed that the State did not need to prove that Morrison knew or had reason to know that A.M. was a minor under the age of 18 to establish criminal liability under NRS 200.710(1). As a result, we must determine whether the instructional error in this case requires reversal.

When a jury instruction is inaccurate, we review for harmless error. *Honea v. State*, 136 Nev. 285, 289, 466 P.3d 522, 526 (2020). An erroneous jury instruction is harmless only if this court is "convinced beyond a reasonable doubt that the jury's verdict was not attributable to the error and that the error was harmless under the facts and circumstances of [the] case." *Id.* at 289-90, 466 P.3d at 526 (quoting *Crawford*, 121 Nev. at 756, 121 P.3d at 590). In this case, we are convinced beyond a reasonable doubt that the instructional error was harmless.

Initially, we note that the jury was properly instructed on the statutory elements of the crime of use of a minor in producing pornography

in a separate instruction.[7] More importantly, however, Morrison stated in his recorded interview—that was admitted by stipulation and relied on by his attorney in closing argument—that he believed A.M. was 16 years old at the time of their sexual relationship. That Morrison knew A.M. was a minor is further supported by overwhelming evidence, including A.M's testimony that Morrison was her neighbor, she first met him while walking to middle school at the age of 11, and he subsequently propositioned her by offering her a candy bar while she was outside playing with her siblings. Although Morrison argues that A.M. "looked like a grown woman," he does not point to any evidence in the record to support that assertion. *Cf. Garcia*, 117 Nev. at 703, 30 P.3d at 1113 (reversing a conviction under NRS 202.055 where the State failed to establish that the defendant had actual or constructive knowledge that the purchaser of alcohol was under the age of 21 where "[t]he record reveals that [the minor] looked substantially older than twenty-one years of age, had a full beard, wore a hat and perhaps even sunglasses when he bought the alcohol" and "all of the petitioners testified that he looked twenty-four to twenty-seven years old"). And, because Morrison conceded his awareness that A.M. was under the age of 18, and therefore a minor, we conclude that the jury's verdict was not due to the

---

[7]Specifically, Jury Instruction 16 provided, in relevant part, that

> [a] person who knowingly either (1) uses, encourages, entices or permits a minor to simulate or engage in or assist others to simulate or engage in sexual conduct to produce a performance, or (2) uses, encourages, entices, coerces or permits a minor to be the subject of a sexual portrayal in a performance regardless of whether the minor is aware that the sexual portrayal is part of a performance, has committed the crime of Use of Minor in Producing Pornography.

inaccurate instruction; thus, the error was harmless beyond a reasonable doubt.

*The district court did not abuse its discretion by denying Morrison's motion to dismiss counsel*

Morrison argues that the district court abused its discretion when it denied his motion to dismiss appointed counsel because the court failed to adequately inquire about his ineffective assistance claim as required by *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004).

We review a district court's denial of a motion to dismiss or substitute counsel for an abuse of discretion. *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 842-43 (2005) (applying the *Young* factors to a motion to dismiss counsel), *modified on other grounds by Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006). When reviewing the district court's decision, we consider three factors: "(1) the extent of the conflict between the defendant and counsel, (2) the adequacy of the [district] court's inquiry into the defendant's complaint, and (3) the timeliness of the motion and the extent of any inconvenience or delay." *Young*, 120 Nev. at 965, 102 P.3d at 574.

As to the first factor, Morrison fails to establish an irreconcilable conflict with his appointed counsel. Morrison filed a single motion to substitute counsel shortly before his scheduled trial. When given the opportunity to describe the alleged conflict, Morrison claimed that counsel failed to communicate with him, but then acknowledged that they had recently attended two settlement conferences together. Morrison's allegations do not demonstrate a significant breakdown in his relationship with appointed counsel that would warrant substitution. *Cf. id.* at 969, 102 P.3d at 576 (finding a "significant breakdown" in the attorney-client relationship that warranted substitution of counsel where defendant

complained about counsel to the court on five separate occasions and counsel violated a court directive to visit the defendant in jail).

Morrison also fails to demonstrate that the district court's inquiry was inadequate. Morrison accepted his counsel's assurance of future communication as a resolution to the communication issue and never renewed his request to dismiss counsel. *See Garcia*, 121 Nev. at 339, 113 P.3d at 844 (concluding that the district court's inquiry, albeit limited, was adequate where "[the defendant's] attorney addressed the court on the motion [to substitute counsel] and agreed to resolve the issues in due course").[8] Therefore, although the district court's inquiry was limited, it was adequate.

As to the third factor, the district court noted that Morrison's request was made approximately one week prior to trial, and Morrison concedes on appeal that his motion was "admittedly quite untimely." *See id.* at 338-39, 113 P.3d at 843 (finding a request for substitution of counsel untimely when it was made at calendar call, just days before trial was set to begin). Therefore, we conclude that the district court did not abuse its discretion by denying Morrison's motion to dismiss counsel.

*The district court did not err by failing to conduct a* Faretta *canvass*

Morrison next asserts that the district court abused its discretion when it failed to perform a *Faretta*[9] canvass after he requested to

---

[8]We also note that Morrison blanketly asserts that the district court's inquiry was deficient but fails to provide any legal authorities or record citations in support of his claim. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (explaining that this court need not consider an appellant's argument that is not cogently argued or lacks the support of relevant authority); NRAP 28(a)(10).

[9]*Faretta*, 422 U.S. 806.

represent himself at calendar call. Though Morrison initially asked to be canvassed, following his counsel's assurance of future communication, he withdrew his request. Because Morrison withdrew his request for self-representation, he invited any alleged error in this regard. *See LaChance v. State*, 130 Nev. 263, 276, 321 P.3d 919, 928 (2014) (holding that "a party will not be heard to complain on appeal of errors which he himself has induced or provoked"). Therefore, Morrison is not entitled to relief on this claim.

*The State did not commit prosecutorial misconduct*

Citing *Hanley v. Sheriff*, 85 Nev. 615, 460 P.2d 162 (1969), Morrison argues that the State committed prosecutorial misconduct by knowingly allowing A.M. to provide false testimony. Morrison contends that A.M. falsely testified that she did not initiate sex or sexual conversations with Morrison and that Morrison forced her to have sex. Morrison further contends that the State had a duty "to correct" this testimony, which was elicited during his cross-examination of A.M.

Morrison did not object at trial, so we review his claim for plain error. *See Rose v. State*, 123 Nev. 194, 208-09, 163 P.3d 408, 418 (2007) (providing that plain error review applies when the appellant failed to object to alleged prosecutorial misconduct). Prosecutorial misconduct is considered plain error if the error either "(1) had a prejudicial impact on the verdict when viewed in the context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings." *Id.* (citation and internal quotation marks omitted).

In *Hanley*, the Nevada Supreme Court addressed a claim of prosecutorial misconduct, noting that "[i]f the state knows that its witness has testified falsely on a point relevant to the credibility of that witness, and fails to correct that falsehood, the conviction is constitutionally infirm."

85 Nev. at 617, 460 P.2d at 163 (citing *Napue v. Illinois*, 360 U.S. 264 (1969)). There, the defendant argued that prosecutorial misconduct required his release from custody because a key witness for the State subsequently recanted his preliminary hearing testimony that implicated the defendant in a murder. *See id.* However, the supreme court disagreed, finding nothing in the record to establish that the State "knowingly offered false testimony." *Id.*

In this case, Morrison cannot establish prosecutorial misconduct, let alone a plain error requiring reversal. At the outset, we note that Morrison does not cite any evidence in the record demonstrating that A.M. testified falsely, that the State *knew* of any alleged falsehoods, or that the State knowingly elicited false testimony from A.M. *Cf.* NRAP 28(e)(1) ("[E]very assertion in briefs regarding matters in the record shall be supported by a reference to the page and volume number, if any, of the appendix where the matter relied on is to be found.").

To establish that the State "knew" A.M. testified falsely, Morrison summarily asserts that the State "had all these records, including Facebook and text messages," which contradicted A.M.'s trial testimony. Morrison failed, however, to provide this court with any of the relevant messages to support this claim.[10] The trial transcript reflects that Morrison

---

[10]Although the parties stipulated to admit two exhibits containing A.M.'s Facebook communications with Morrison, Morrison did not include any of those communications in the record on appeal. *See* NRAP 10(a) (stating that "[t]he trial court record consists of the papers and exhibits filed in the district court"); NRAP 10(b)(1) (providing that the parties shall include in an appendix "the portions of the trial court record to be used on appeal"); *see also* NRAP 10(b)(2) (stating that "[i]f exhibits cannot be copied to be included in the appendix the parties may request transmittal of the original exhibits"). Likewise, Morrison did not include in the record on

referenced A.M.'s Facebook communications while cross-examining A.M. in an effort to impeach her credibility;[11] however, the State did not conduct any redirect thereafter. To the extent Morrison implies that *Hanley* required the State to conduct redirect and highlight the alleged inconsistencies identified by Morrison on cross-examination, we disagree. Even if some of the Facebook messages appeared to be inconsistent with A.M.'s testimony during cross-examination, Morrison has not established that the State engaged in misconduct by subsequently failing to "correct" her testimony.

Likewise, Morrison has not established a prejudicial impact on the verdict. In his closing argument, Morrison took full advantage of the alleged contradictions between the Facebook messages and A.M.'s testimony on cross-examination to argue that "everything [A.M.] said to you yesterday was a lie" and ask the jury to disregard her testimony. Arguably, Morrison benefited from his impeachment of A.M., with the jury acquitting him of the three counts of sexual assault that were not independently

---

appeal any text messages between himself and A.M. As a result, we cannot determine whether A.M.'s trial testimony was inconsistent with her Facebook or text messages, let alone that her trial testimony was "false." And because it is the appellant's burden to ensure that a proper appellate record is prepared, we necessarily presume that the missing documents support the challenged decisions, including the jury's verdict. *Cf. Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007).

[11]On cross-examination, Morrison sought to portray his sexual relationship with A.M. as consensual and to depict A.M. as a liar. Initially, A.M. testified that Morrison forced her to have sex. After confronting A.M. with Facebook messages that purportedly indicated otherwise, at the end of her cross-examination, A.M. conceded that she "agree[d]" to have sex with Morrison.

corroborated by his own admissions. Furthermore, even if A.M. did testify falsely on matters of force or consent, the State was not required to prove that Morrison forced A.M. to have intercourse or that A.M. did not consent to intercourse. *See* NRS 200.366(1)(b) ("A person is guilty of sexual assault if the person . . . [c]ommits a sexual penetration upon a child under the age of 14 years . . . ."). We therefore conclude that Morrison has not established plain error.

*The State did not improperly comment on the evidence during closing argument*

Morrison argues that the district court erred in overruling his objection to the State's comment during closing argument that Morrison attended high school with A.M.'s older brother and therefore would have known that A.M. was not age 16 or older at the time of the offenses. Morrison contends on appeal, as he did below, that the prosecutor's comment was based on inadmissible hearsay because Detective Salkoff made that statement during a recorded interview that Morrison stipulated to admit into evidence. The district court overruled the objection, finding that the statement was admissible since Morrison's "acquiescence" in response to Detective Salkoff's statement effectively adopted it.[12]

---

[12]Morrison argues that the court's ruling violated his Fifth Amendment right to remain silent in response to Detective Salkoff's comment; however, Morrison has not provided this court with the video recording or a transcript of the recorded interview, so we necessarily presume that he waived his right to remain silent at the outset of the interview. *See Cuzze*, 123 Nev. at 603, 172 P.3d at 135; *see also Anderson v. Charles*, 447 U.S. 404, 408 (1980) (holding that "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent" and may be questioned about why they did not correct an officer's factual statement during an interview).

A district court's evidentiary rulings, and its rulings regarding the latitude allowed to counsel in closing argument, are reviewed for an abuse of discretion. *Glover v. Eighth Jud. Dist. Ct.*, 125 Nev. 691, 704, 220 P.3d 684, 693 (2009). Here, because Morrison stipulated to admit the video recording of the interview and did not object when it was played for the jury, Morrison forfeited any claim that Detective Salkoff's statements during that interview were inadmissible hearsay. *See Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018) ("The failure to preserve an error, even an error that has been deemed structural, forfeits the right to assert it on appeal.").

While Morrison challenges the State's reference to the interview during its closing argument, "[t]he State is free to comment on testimony, to express its views on what the evidence shows, and to ask the jury to draw reasonable inferences from the evidence." *Randolph v. State*, 117 Nev. 970, 984, 36 P.3d 424, 433 (2001). Because the video recording was admitted by stipulation, the State's reference was a permissible comment on the evidence presented at trial. Therefore, Morrison is not entitled to relief.

## CONCLUSION

The district court erred when it instructed the jury that a lack of knowledge or a reasonable mistake as to the age of a child victim is not a defense to the crime of use of a minor under the age of 14 in producing pornography. Although the State did not need to prove that Morrison knew or had reason to know that A.M. was under the age of 14 to impose a sentence under NRS 200.750(2), the State *did* need to prove beyond a reasonable doubt that Morrison knew or had reason to know that A.M. was a minor under the age of 18 for the jury to convict him under NRS 200.710(1). Because Morisson admitted to police that he believed A.M. was

16 years old during their sexual relationship, however, the district court's instructional error was harmless beyond a reasonable doubt. Finding no other errors, we affirm the judgment of conviction.[13]

_____, J.
Westbrook

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

---

[13]We reject Morrison's argument that his convictions and sentence are unconstitutional under the Eighth Amendment because the underlying statutes were "meant to punish pedophiles" and Morrison "doesn't have an attraction to small children." And Morrison does not cogently argue why the punishment imposed in this case violates the Equal Protection Clause. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6. Insofar as Morrison has raised any other arguments that are not specifically addressed in this opinion, we have considered the same and conclude that they do not present a basis for relief.